IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TOMMIE EWING,

      Plaintiff,                        No. CIV 2:10-cv-0452-GEB-JFM (PS)

    vs.

PATRICK R. DONAHOE, *Postmaster General*, *United States Postal Service*,

      Defendant.                  FINDINGS & RECOMMENDATIONS

_____/

        On May 10, 2012, the court held a hearing on defendant Patrick Donahoe's motion for summary judgment. Plaintiff appeared in pro per. Lynn Trinka Ernce appeared on behalf of defendant. Upon consideration of the motion on file in this action, discussion with plaintiff and counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

                      FACTUAL AND PROCEDURAL BACKGROUND

A.    The Application and Interview

        On May 4, 2005, plaintiff completed an entrance examination to determine his eligibility for employment with the United States Postal Service ("USPS"). See Ewing Dep. at 34; Def.'s Mot. for Summ. J., Ex A (Ex. 3 to Pl.'s Dep.). On July 13, 2005, the USPS sent plaintiff a letter stating that he was eligible for employment based on the results of the

examination and noting his placement on the USPS register for the position of Custodian / Laborer Custodial. Def.'s Mot. for Summ. J., Ex A (Ex. 3 to Pl.'s Dep.).

On August 10, 2005, a call-in notice was mailed to plaintiff notifying him that his name had been reached from the register and inviting him to interview at the West Sacramento Administration Building on August 22, 2005 for the position of Laborer Custodial. Def.'s Mot. for Summ. J., Ex. A (Ex. 5 to Pl.'s Dep.). Plaintiff was asked to bring with him to the interview a record of his military service and certain forms that he was directed to complete prior to his arrival, including an Application for Employment. Id. The call-in notice expressly stated "This notice is not an offer of employment. Do not resign from your present position at this time." Id.

On August 19, 2005, plaintiff completed and signed an Application for Employment at the West Sacramento USPS office. Ewing Dep. at 43; Def.'s Mot. for Summ. J., Ex. A (Ex. 4 to Pl.'s Dep.). On the application, plaintiff claimed a veteran preference for a "Compensable Disability (30% or more)." Id. at 3. He also answered a number of questions on the application, including Question E-7A, which asked whether the applicant had ever been convicted of a crime or was under charges for any offenses against the law; plaintiff checked "No" in response to this question. Id. at 4. Plaintiff also indicated he was unemployed and that he had been "medically released" from his then-most recent employer. Id. at 2.

In addition to his Application for Employment, plaintiff signed a number of other documents on August 19, 2005, including a document meant to reflect his understanding of Question E-7A on the Application for Employment. Def.'s Mot. for Summ. J., Ex. A (Ex. 7 to Pl.'s Dep.). This document stated "If you falsify your application, you may be dismissed. It may also bar you from working in the Federal Service. It will mar your employment record." Id.

In addition, plaintiff signed a document entitled "Important Notice to Postal Applicants," which directed the plaintiff to complete the Application for Employment accurately and to include all convictions. Def.'s Mot. for Summ. J., Ex. A (Ex. 8 to Pl.'s Dep.). It also

1 indicated that "[i]f it is later determined that elements of any employment documents have been
2 answered falsely, you are subject to removal from the Postal Service."  Id.

3        Next, plaintiff signed a "Pre-Employment Screening – Authorization and
4 Release" form, which authorized the USPS to obtain information necessary to determine
5 plaintiff's fitness and suitability for employment in the USPS.  Def.'s Mot. for Summ. J., Ex. A
6 (Ex. 9 to Pl.'s Dep.).

7        Finally, plaintiff filled out an Employee's Withholding Allowance Certificate and
8 a W4 Form.  Def.'s Mot. for Summ. J., Ex. A (Ex. 11 of Pl's Dep.).

9        On August 22, 2005, plaintiff interviewed with Larry Schlosser.  Ewing Dep. at
10 63; Def.'s Mot. for Summ. J., Ex. A (Ex. 15 of Pl.'s Dep.).  Schlosser's interview notes reflect
11 that plaintiff was deemed qualified for the position, and that Schlosser recommended plaintiff for
12 the position.  Def.'s Mot. for Summ. J., Ex. A (Ex. 15 of Pl.'s Dep.).  The notes also display
13 plaintiff's initials next to "No" in response to the following question: "Have you ever been
14 convicted of an offense against the law? You must include plea bargains, no contests,
15 misdemeanors and felonies."  Id.; Ewing Dep. at 63-64.

16 B.    The Medical Assessment

17        Following the August 22, 2005 interview, plaintiff received documents directing
18 him to appear on August 30, 2005 at the USPS Administration Building in West Sacramento for
19 a medical assessment and to bring with him a completed medical questionnaire.  Ewing Dep. at
20 39-40; see Def.'s Mot. for Summ. J., Ex. A (Ex. 5 of Pl.'s Dep.).  The document scheduling
21 plaintiff's appointments provided: "As part of the requirements for employment with the United
22 States Postal Service, you are required to pass a drug screen and have a medical assessment."
23 Def.'s Mot. for Summ. J., Ex. A (Ex. 15 at 3 of Pl's Dep.).  On the form scheduling plaintiff to
24 submit a specimen for urinalysis drug testing, plaintiff is identified as "Applicant."  Id.

25        On an Essential Functions checklist dated August 23, 2005 and signed by plaintiff
26 on August 29, 2005, plaintiff certified that he did not have medical disorder or physical

3

1    impairment that could interfere in any way with the full performance of the duties of the position
2    for which he was applying.  Def.'s Mot. for Summ. J., Ex. A (Ex. 17 of Pl.'s Dep.).  On the top
3    of this checklist, plaintiff was identified as "Applicant[]."  Id.  The form also noted "Position
4    Offered: Custodian."  Id.

5    On the medical history questionnaire, the following was written on the first page,
6    which plaintiff signed on August 30, 2005: "THE POSITION I HAVE BEEN OFFERED IS:
7    Custodian."  Ewing Dep. at 39-40; Def.'s Mot. for Summ. J., Ex. A (Ex. 20 of Pl.'s Dep.).

8    At the August 30, 2005 medical assessment, Aqua Jenkins, R.N., conducted a
9    medical interview of plaintiff based on his responses on the medical questionnaire.  See Ewing
10   Dep. at 79; Def.'s Mot. for Summ. J., Ex. A (Ex. 26 of Pl.'s Dep.).  During this interview,
11   plaintiff informed Nurse Jenkins of his mental health history, including counseling for Atypical
12   Psychosis.  See Def.'s Mot. for Summ. J., Ex. A (Ex. 26 of Pl.'s Dep.).

13   After the medical interview, Nurse Jenkins sent plaintiff a "New Hire Physical
14   Appointment Letter" dated September 6, 2005.  Def.'s Mot. for Summ. J., Ex. A (Ex. 25 of Pl.'s
15   Dep.).  Per this letter, plaintiff was directed to appear on September 9, 2005 at the Dameron
16   Occupational Health Services office in Stockton, California for a physical examination to
17   complete his medical assessment.  Id.  The letter also stated that, following the physical
18   examination, plaintiff would be notified regarding the status of his job application.  Id.

19   On September 9, 2005, plaintiff was examined by Corky J. Hull, M.D., M.P.H.
20   Def.'s Mot. for Summ. J., Ex. A (Ex. 26 of Pl.'s Dep.).  Per Dr. Hull's notes, plaintiff suffered a
21   knee injury in 1991 during a basketball game while he was in the Army.  Id. at 1, 3.  Although
22   plaintiff received physical therapy for that injury, he continued to complain of chronic slight
23   pain, which became worse with prolonged sitting.  Id. at 3.  Dr. Hull's notes also reflect that
24   plaintiff was reluctant to answer questions regarding his mental health history, though plaintiff
25   did state that he was seen by a psychiatrist from 2001 through 2001 for "atypical psychosis."  Id.
26   Based on this examination, Dr. Hull recommended modified job functions and further stated that,

in his medical opinion, plaintiff was at an increased risk of injuring his left knee within the next six months. Id. at 3-4.

C. <u>Plaintiff Found Unsuitable</u>

On September 27, 2005, Brandi Jentgen, Manager of Personnel Services for the USPS, sent plaintiff a letter informing him that the USPS determined he was medically unsuitable for the Custodian position. Def.'s Mot. for Summ. J., Ex. A (Ex. 27 of Pl.'s Dep.). Jentgen wrote that, based on a review of plaintiff's medical records and evaluation by the USPS's medical staff, plaintiff's medical condition was incompatible with the functions of the job. Id.

D. <u>The First EEO Complaint</u>

On October 14, 2005, plaintiff filed an equal employment opportunity ("EEO") complaint alleging disability discrimination. FAC at 4, ¶ 15.

On November 2, 2005, plaintiff and Jentgen participated in a mediation and entered into a settlement agreement. Ewing Dep. at 96-99; Def.'s Mot. for Summ. J., Ex. A (Ex. 29 of Pl.'s Dep.). The settlement agreement provided that it "constitute[d] a full and final settlement of all issues arising out of the subject matter of [plaintiff's] EEO complaint numbers and by signing this agreement the [plaintiff] withdr[ew] any and all pending EEO complaints and appeals relative to the subject matter of these complaints." Id.

By the terms of this settlement agreement, plaintiff agreed to be examined by his own doctor, who would review plaintiff's medical condition and provide the USPS with a medical report. Def.'s Mot. for Summ. J., Ex. A (Ex. 29 of Pl.'s Dep.). Plaintiff also sought reasonable accommodation. Id. In return, Jentgen agreed to consider plaintiff for a position if it was determined that plaintiff was capable of performing the specific job duties. Id.

With respect to his request for reasonable accommodation, plaintiff was asked to submit the following information: (1) a diagnosis of plaintiff's medical condition; (2) a statement of his medical requirements and/or restrictions; (3) his physician's assessment as to the duration

1  of his restrictions; and (4) his physician's assessment of how the impairment impacts him.
2  Def.'s Mot. for Summ. J., Ex. A (Ex. 30 of Pl.'s Dep.).

3  In accordance with the terms of the settlement agreement, plaintiff was examined
4  at the Veterans Administration ("VA") Hospital by a doctor of his choosing on December 14,
5  2005. Ewing Dep. at 106; Def.'s Mot. for Summ. J., Ex. A (Ex. 33 of Pl.'s Dep.). The doctor's
6  notes indicate that plaintiff had chronic left knee pain for fifteen years, and that he had probable
7  schizophrenia. Def.'s Mot. for Summ. J., Ex. A (Ex. 33 at 1 of Pl.'s Dep.). The notes also
8  indicate that plaintiff was treated for a "psychotic disorder" on January 21, 2004. Id. at 2.

9  On February 7, 2006, plaintiff re-signed his Application for Employment. Def.'s
10 Mot. for Summ. J., Ex. A (Ex. 36 of Pl.'s Dep.).

11 Thereafter, plaintiff, who was identified as "Employee," was directed to report for
12 training on February 21, 2006 for the position of Custodian. Def.'s Mot. for Summ. J., Ex. A
13 (Ex. 39 to Pl.'s Dep.).

14 By letter dated February 10, 2006, however, plaintiff's job offer was rescinded
15 because it was determined that plaintiff had provided inaccurate information on his medical
16 questionnaire. Def.'s Mot. for Summ. J., Ex. A (Ex. 37 to Pl.'s Dep.). Specifically, the USPS
17 determined that, based on the VA notes following his physical examination, plaintiff failed to
18 disclose his the fact that he had been treated for a mental or psychiatric problem in the previous
19 ten years. Id.

20 On February 13, 2006, plaintiff wrote to the USPS explaining his failure to
21 disclose information regarding his mental health history. Opp'n, Ex. E. He stated that he was
22 afraid he would be discriminated against with regard to employment. Id. He also stated that he
23 informed Nurse Jenkins of his mental health history during his initial medical assessment. Id.

24 On February 21, 2006, Jentgen sought a criminal check on plaintiff. Opp'n, Ex.
25 F. This check unearthed a misdemeanor theft charge from 1987, which contradicted plaintiff's
26 statements on his employment application that he had never been convicted of a crime. Id.

6

On March 14, 2006, the USPS affirmed its withdrawal of the job offer based on, inter alia, the following reasons: (1) plaintiff was not forthcoming with regard to his mental health history until after Nurse Jenkins noticed a discrepancy in plaintiff's answer on his medical questionnaire and plaintiff's medical records; (2) plaintiff had answered "No" in response to two questions on the medical questionnaire, which asked whether plaintiff was then or previously treated for nervous or mental trouble; (3) plaintiff failed to provide information to Dr. Hull regarding his mental health history in response to direct questioning by Dr. Hull; and (4) a criminal check revealed that plaintiff had a criminal history, which he failed to disclose on his employment application.  Def.'s Mot. for Summ. J., Ex. A (Ex. 41 of Pl.'s Dep.).

E.  The Second EEO Claim

On April 24, 2006, plaintiff filed a second EEO complaint alleging retaliation and breach of contract.  See Compl. at 4.

On November 25, 2009, the Equal Employment Opportunity Commission ("EEOC") entered summary judgment in favor of the USPS on the second EEO complaint.  Def.'s Mot. for Summ. J., Ex. B.

F.  This Action

Plaintiff initiated this action on February 22, 2010.  It is proceeding on a first amended complaint ("FAC").  Of the 13 causes of action listed in the FAC, only plaintiff's claim for violation of the Rehabilitation Act, 29 U.S.C. §§ 701-796 remains.  The rest of the claims were dismissed on grant of defendant's motion to dismiss for failure to state a claim.

G.  Class Action, *Hill v. Donahoe*

In 2004, a class action EEOC complaint, Hill v. Donahoe, was filed in Atlanta, Georgia.  The challenged practice in that case is the USPS asking disabled veteran job applicants to bring medical documentation, in excess of what is required to verify the disabled veteran's preference, to job interviews.  Plaintiff is a member of the Hill class.

/////

1         In December 2010, the Hill class and the USPS entered into a settlement agreement that was found to be fair, reasonable and accurate following a fairness hearing on September 1, 2011 before the Honorable Philip Davi, the EEOC administrative judge.  Plaintiff objected to the settlement at the hearing, and he appealed Judge Davi's fairness order.  Def.'s Mot. for Summ. J., Ex. A (Ex. 48 of Pl.'s Dep.).  That matter is presently pending on appeal.

## DISCUSSION

A.     The Rehabilitation Act

        Defendant first moves for summary judgment on plaintiff's claim that he was subjected to improper medical inquiries before receiving a conditional job offer.  Plaintiff, who erroneously believes that a conditional job offer means a job offer with a specific start date, contends that the medical assessment on August 30, 2005, and the physical examinations on September 9, 2005 and December 6, 2005, were in violation of the Rehabilitation Act because they were conducted before his February 21, 2006 start date.

    1.     Applicable Law

        The Rehabilitation Act prohibits employment discrimination on the basis of disability.  29 U.S.C. §§ 791 *et seq.*  Section 501 of the Rehabilitation Act (29 U.S.C. § 791) expressly invokes the substance of the Americans with Disabilities Act (the "ADA").  Id. (incorporating 42 U.S.C. §§ 12111 *et seq.*).  The Ninth Circuit looks to the standards applied under the ADA to determine whether a violation of the Rehabilitation Act occurred in the federal employment context.  Lopez v. Johnson, 333 F.3d 959, 961 (9th Cir. 2003) ( "Section 501 borrows its substantive standards from the Americans with Disabilities Act (ADA).") (citing 29 U.S.C. § 791(g)); Coons v. Sec'y of the U.S. Dept. of Treasury, 383 F.3d 879, 884 (9th Cir. 2004) ("The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act"); Walton v. U.S. Marshals Serv., 492 F.3d 998, 1003 n. 1 (9th Cir. 2007) (citing Coons).

/////

As a general rule with respect to employment discrimination, the ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Accordingly, an employer is prohibited from conducting "a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." Id. § 12112(d)(2)(A). Nonetheless, "[a] covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions. Id. § 12112(d)(2)(B).

Within the context of employment entrance examinations, "[a] covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant," so long as certain privacy conditions are met. 42 U.S.C. § 12112(d)(3). Pursuant to this section, a covered entity may only require medical examinations and may only make inquiries of an employee if the examination or inquiry is shown to be job-related and consistent with business necessity. Id. § 12112(d)(4)(A).

2. Analysis

a. The Pre-Settlement Agreement Medical Inquiries

Defendant moves for summary judgment on the ground that the USPS gave plaintiff a conditional job offer before the August 30, 2005 medical assessment and the September 9, 2005 physical examination, and that, therefore, the USPS was in compliance with the Rehabilitation Act.

On review, the court finds that the record does not support defendant's assertion that a conditional job offer was made. Initially, the record lacks any direct evidence of a conditional job offer, such as a written offer or an affidavit that such an offer was made orally. See, e.g., Leonel v. American Airlines, Inc., 400 F.3d 702 (9th Cir. 2005) (evidence of both oral

and written conditional offers of employment); Lubetsk v. Applied Card Systems, Inc., 296 F.3d 1301, 1303 (11th Cir. 2002) (written conditional offer); Hobdy v. Texas, 2002 WL 31422318, *2 (W.D. Tex. 2002) (plaintiff signed a statement entitled "Conditional Job Offer"); E.E.O.C. v. American Cyanamid Co., 2002 WL 31505551, * 1 (E.D. Mo. 2002) (written conditional job offer); Greene v. City of West Haven, 201 F.3d 431 (2d Cir. 1999) (written conditional job offer); Rodriguez v. Alcoa Inc., 805 F. Supp. 2d 310, 312-13 (S.D. Tex. 2011) (written conditional job offer); Downs v. Massachusetts Bay Transp. Authority, 13 F. Supp. 2d 130, 132 (D. Mass. 1998) (written conditional job offer).

While the record does include some documents that refer to an offer of employment, these documents themselves are not conditional job offers because they do not describe any conditions of employment with the USPS. See Def.'s Mot. for Summ. J., Ex. A (Ex. 17 (Essential Functions checklist, which has "Position Offered: Custodian" on the top of the form), Ex. 21 (Medical History Questionnaire, which states "THE POSITION I HAVE BEEN OFFERED IS: Custodian") and Ex. 25 (letter directing plaintiff to take a physical exam, with the subject line "New Hire Physical Appointment Letter").

Although defendant relies heavily on plaintiff's deposition testimony as proof of a conditional job offer, the court finds this reliance misplaced for a number of reasons. First, plaintiff's understanding of Schlosser's statements is irrelevant to the USPS's responsibility pursuant to the Rehabilitation Act to give an unequivocal conditional job offer before asking applicants to submit to medical-based exams and questions. Next, insofar as defendant relies on plaintiff's testimony to assert that Schlosser gave an oral conditional job offer, this is inadmissible hearsay. Fed. R. Evid. 801. Lastly, even if reliance on plaintiff's deposition testimony was proper, the court finds the testimony to be ambiguous, at best. In response to nearly every question asked by defense counsel concerning plaintiff's receipt of a conditional job offer, plaintiff either responded affirmatively and then qualified his answer, or answered negatively and said he did not receive a job offer at all. Although this confusion may have root

1  in plaintiff's misunderstanding of what constitutes a job offer (plaintiff erroneously believes that
2  a conditional job offer is an offer accompanied with a start date) and despite defense counsel's
3  best efforts to guide plaintiff, the transcript remains unclear as to whether plaintiff was merely
4  recommended for the job or was given a job offer. To illustrate this ambiguity, the court refers
5  to the following exchange:

Q: On August 22nd, you were interviewed for the job; correct?

A: Correct.

Q: Did they tell you they were going to hire you?

A: I think so.

Q: They recommended that you be hired for the job; right? That's what this says anyway?

A: What – they recommended me, but they didn't give me a hire date until February 21st, 2006.

Q: They didn't give you a hire date, but they told you they were going to hire you – right – on August 22nd? They said they were going to hire you?

A: I can remember – they was recommending me. I wasn't really hired hired. It wasn't liked – it wasn't solidified until February 2006.

Q: So what did the interviewer tell you at the end of the interview? This was Mr. Schlosser; right?

A: I think he said, don't quit your present job.

Q: What did he tell you about – did he say, I'm recommending you to be hired?

A: I think he said – he said, it looks good for everybody but don't quit your – don't quit your prior job. He didn't say definitely.

Q: When he said, it looks good, what does that mean? What did that mean to you, that you were going to be hired?

A: I thought I was going to be hired, but I didn't really – it wasn't a hundred percent sure until I received the affidavit stating that I was, you know – until I received the February 22nd hiring date.

Q: But you felt like – when you finished this interview, you thought you were going to be hired?

A: Yeah. I thought I was.

> Q: He told you he wanted to hire you?
>
> A: Yes. He was saying – he was recommending us for hire, but he was saying don't quit your present job, because it looks good, but don't quit your present job. That's all I remember.
>
> Q: What did you have to do next? Did he tell you [that] you had to take a medical exam to get cleared for medical?
>
> A: On the same day?
>
> Q: Uh-huh.
>
> A: I think so.
>
> Q: So you needed to pass a medical before you could be hired?
>
> A: Yes.

Ewing Dep. at 65-67; see also id. at 73-75, 77, 83, and 92-93.

On this record, then, there is no evidence of a conditional job offer. Rather, the record merely demonstrates that Schlosser recommended plaintiff for the position: at his deposition, plaintiff testified that Schlosser was recommending him and that, although "it looks good," plaintiff was advised not to quit his present job. Ewing Dep. at 66. Schlosser's notes also reflect only that plaintiff was being recommended for the position; they do not reflect that plaintiff was given a conditional job offer. See Def.'s Mot. for Summ. J., Ex. A (Ex. 15 of Pl.'s Dep.).

Notwithstanding defendant's failure to submit evidence that a conditional job offer was made before plaintiff was physically examined on August 30, 2005, the court finds that plaintiff's complaint regarding that examination was resolved when he and Jentgen entered into a settlement agreement on November 2, 2005. See Def.'s Mot. for Summ. J., Ex. A (Ex. 29 of Pl.'s Dep.). Per the terms of that settlement agreement, plaintiff agreed to withdraw "any and all pending EEO complaints and appeals relative to the subject matter of these complaints." Id. Furthermore, plaintiff is barred from bringing a claim alleging breach of that settlement agreement. See Munoz v. Mabus, 630 F.3d 856 (9th Cir. 2010).

        b.    <u>The December 14, 2005 Physical Examination</u>

On December 14, 2005, plaintiff underwent a second physical examination, this time at the VA Hospital per the terms of the November 2, 2005 settlement agreement. This physical examination was conducted after plaintiff requested reasonable accommodation in connection with the settlement agreement. There was no violation of the Rehabilitation Act on these facts. See <u>Harris v. Harris & Hart, Inc.</u>, 206 F.3d 838, 841-42 (9th Cir. 2000).

Therefore, summary judgment should be granted on this ground.

B.    <u>Failure to Exhaust Administrative Remedies</u>

Defendant next moves for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies. Defendant argues that because the claim here is identical to the claim in <u>Hill v. Donahoe</u>, plaintiff's Rehabilitation Act claim is premature as that matter is presently pending on appeal.

In <u>Hill v. Donahoe</u>, the challenged practice is the USPS asking disabled veteran job applicants to bring medical documentation, in excess of what is required to verify the disabled veteran's preference, to job interviews. Here, plaintiff contends he was subjected to physical examinations after the interview and prior to an offer of employment. Because these claims are not identical, summary judgment should be denied on this ground.

Based on the foregoing, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised

/////

/////

that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 95 1 F.2d 1153 (9th Cir. 1991).

DATED: June 26, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

/014;ewin0452.msj